## R. E. HATCH *v.* THE STATE.

1. EVIDENCE. — HANDWRITING used as a standard of comparison must be either an admitted signature or manuscript, or must be established by clear and undoubted proof. For a discussion of this subject, see opinion in *Phillips* v. *The State, ante,* p. 364.

2. PRACTICE IN THE COURT OF APPEALS. — It is well settled that the rulings of the court below in admitting or excluding evidence will not be revised on appeal, unless proper bills of exception were reserved, and are brought up with the record. See the opinion for evidence admitted, and assigned as error, not available under this rule.

3. PRACTICE. — In a trial for forgery, it was not error to allow the jury to use a magnifying-glass in the inspection of documentary evidence.

4. CHARGE OF THE COURT. — Special charges will be refused unless warranted by the evidence.

5. SAME. — Defendant asked the court to charge that "the recitals in the body of the certificate offered in evidence are not evidence of any fact. These facts are susceptible of other and better proof. You will therefore disregard the recitals in such certificate as evidence of any fact, unless proved by other testimony. The certificate can only be used to show that a genuine certificate was transferred, or attempted to be transferred." *Held* to have been properly refused, as the trial was for forgery of the transfer and not of the certificate.

6. SAME. — The court, in charging the jury that "in all criminal cases the defendant is presumed to be innocent, and unless the jury are satisfied, from the evidence, of the guilt of the defendant, beyond a reasonable doubt, they should acquit," substantially complied with the requirements of art. 640 of the Code of Criminal Procedure.

7. SAME. — The court was asked to charge that "the burden of proof is on the State to show defendant's guilt, and he is presumed innocent until shown guilty by competent testimony. It devolves upon the State to show that the transfer referred to in the indictment is a forgery. You must be

satisfied by the evidence, beyond a reasonable doubt, that George W. Jenkins, the grantee in the certificate, did not execute the transfer, or authorize its execution, and the burden of proving this is upon the State. If you are not satisfied of the fact, you will find defendant not guilty." *Held*, that, in view of the evidence, this charge, having been asked, should have been given.

8. CONTINUANCE. — The affidavit for a continuance sets out that defendant expected to prove by the absent witness that he (witness) knew the identical G. W. J., the grantee in the certificate, and saw him about the date of the acknowledgment of the transfer, *en route* for one of the upper counties, and that defendant expected to prove by said witness the identity of the said grantee, and show the genuineness of said transfer. *Held*, material to the issue involved, and the continuance should have been granted.

APPEAL from the District Court of Travis. Tried below before the Hon. E. B. TURNER.

Two counts were contained in the indictment, — forgery, and the utterance of a forged instrument. The defendant was tried on the last count, found guilty, and his punishment was assessed at five years in the penitentiary. The transactions in this case were the same involved in the case of *Phillips* v. *The State*, *ante*, p. 364, and, with the exception of the additional testimony hereto appended, the testimony in the two cases was identical.

W. M. Gilleland testified that he was acquainted with defendant, Hatch. Witness saw the certificate in question a few days before it was transferred. Defendant handed the certificate to witness, and he carried it to the land office to ascertain if it was genuine, and whether or not a duplicate had ever issued or been applied for upon it. Ascertained that it was genuine, that no duplicate had ever issued or been applied for, and gave it back to the defendant. There was no transfer attached to the certificate at that time, and the certificate had never been in the land office. The witness did not see the sale of the certificate by Jenkins to defendant. Witness was asked, in the back room of the Palace Saloon, to sign the transfer as a witness, and did so. Defendant brought the man Jenkins to witness, introduced

him, and told witness that Jenkins wanted him to sign the transfer as a witness. Asked Jenkins if that was his signature, and receiving an affirmative answer, signed it, as appears upon the transfer, which was not then attached to the certificate. Had seen Jenkins often in town, but up to this time did not know his name.

Witness does not know what consideration defendant paid for the certificate; was not present when the trade was made. Did not go with Jenkins and Hatch to Neill's office to acknowledge the certificate. Did not introduce Jenkins to Neill. Has heard Neill's testimony on that point, and pronounces it false. Does not know M. M. Phillips.

Witness corroborates the testimony of H. L. Rankin (see *Phillips* v. *The State, ante,* p. 364), except he states that Rankin waited for him at the land office until after three o'clock, P. M., on the day he bought the certificate from Hatch, when the two (Rankin and witness) went down to the Palace Saloon together. After Hatch had received the purchase-money of the certificate from Rankin, he paid witness a debt of $25 which he owed him. Witness had no interest in the certificate whatever. Did not take it out of the land office, or out of H. W. Sublett's papers, and give it to defendant for the purpose of manufacturing a transfer. Witness believed, when he signed the transfer as a witness, that the transfer was genuine, and believes so yet. Did tell Rankin that he knew Jenkins, and that he was a wood-hauler, and lived in the mountains. Went before Fulmore and proved up the transfer, as appears upon the paper.

*W. M. Walton* and *J. W. Robertson,* for the appellant.

*H. H. Boone,* Attorney-General, for the State. The appellant, on the second day of November, A. D. 1877, was indicted by the grand jury of Travis County. The indictment contains two counts, — one charging him with forgery of the indicted intsrument, the other with uttering it,

knowing it to be forged. Upon the latter count the appellant was put upon trial on the twenty-fourth day of May, 1878, found guilty, and his punishment assessed at five years' confinement in the State penitentiary. Motion for new trial was made, which being overruled, appeal was taken.

The first error assigned is the refusal of the court to continue the case. It is stated that a subpœna for the witness John Crooks was obtained on the thirteenth day of May, 1878, and placed in the hands of John Kirk, a deputy-sheriff of Travis County; that on the 21st of May defendant was, by his attorney, verbally informed by the deputy-sheriff that he had not been able to find said Crooks; and on the 22d of May, 1878, he placed another subpœna in the hands of said deputy, and informed him where said witness could be found.

It will be seen from the affidavit of said deputy-sheriff, John Kirk, that on the 16th of May, 1878, he, said Kirk, went to defendant with the subpœna, and informed him that he could not find the witness, and asked him where said witness could be found; when said defendant, Hatch, told him, in substance, that he did not know any such man as John Crooks, and he was not a witness for him in said cause. Whereupon, affiant says, he ceased to search for said witness. There is an affidavit of John W. Robertson, Esq., one of the attorneys for defendant, which is intended to explain why defendant did not know that said Crooks was a witness in his case, and for that end is, perhaps, satisfactory; but neither in that affidavit, nor in any other, is it shown that any such explanation was made to the deputy-sheriff, Kirk, before, at the time, or after the second subpœna was issued. The second subpœna, as is shown by the affidavit for continuance, was placed in the hands of the same deputy-sheriff, John Kirk, who had already been informed by defendant that he did not know any such man as John Crooks, — that he was not a witness in his case. No explanation was made to the deputy-sheriff, — nothing said or done to change

the effect of this statement upon the mind of the deputy-sheriff. From this statement, he reached the conclusion that there was no such man as Crooks; or, if there was, that he was not wanted as a witness by defendant. Nothing was done or said to change this conclusion, except a repetition of the instruction and information first given the officer, that said Crooks could be found at a certain place.

It may be that there was not a full and complete under-standing between the defendant and his lawyer, resulting, not from any want of confidence, but, perhaps, from want of a full and free exchange of information; but still the fact remains, that the deputy-sheriff in whose hands both subpœnas were placed had been given to understand that the witness Crooks was not needed or wanted. It is re-spectfully submitted that this does not show diligence, or any legal excuse for the want of it. Even if there be suf-ficient legal excuse shown why the first subpœna was not sooner issued, there is not the shadow or semblance of legal excuse shown for not correcting the statement made to the officer: that John Crooks was not a witness in defendant's case.

That counter-affidavits are admissible, showing want of diligence on the part of an applicant for continuance, has been settled by this court. *Murray* v. *The State*, 1 Texas Ct. App. 174; *Dixon* v. *The State*, 2 Texas Ct. App. 530.

The application for a first continuance must show, not only that diligence has been used to procure the attendance of witnesses, but it must state " the facts which are expected to be proved by the witnesses; and it must appear to the court that they are material." Code Cr. Proc., art. 518. " And, in passing on its materiality, this court will con-sider it in connection with the evidence which was adduced at the trial." *Richardson* v. *The State*, 2 Texas Ct. App. 322.

So, considering the facts stated in the affidavit for con-tinuance, which defendant swore he expected to prove by

the witness Crooks, they were entirely immaterial, and could not possibly have changed the result if they had been proven or admitted. This is made only the more apparent and certain by comparing the facts which the affidavit states he expected to prove, with the facts to which said witness swore he would have testified, in his affidavit attached to the motion for a new trial.

The second question presented — viz., the ruling of the court on questions of evidence — has been so fully discussed on both sides in briefs presented in the case of *J. R. Ham* v. *The State*, that I shall not do more than to refer the court to the briefs in that case, except to add that I cannot see the force of the objection, or of the argument, or the application of the only authority cited, against the use, by the jury, of a magnifying-glass. The same reasoning would exclude from a near-sighted juryman, or from one whose vision had grown dim by age, the use of spectacles; would require them to close their eyes upon a trial, and to depend wholly upon their sense of hearing to arrive, from the evidence adduced, whether documentary or otherwise, at the guilt or innocence of the party on trial. Code Cr. Proc., art. 637 (1 Pasc. Dig., art. 3132), and authorities cited in brief for the State in case of *Ham* v. *The State*, 4 Texas Ct. App. 645.

The charges given by the court are, it is submitted, a full, clear, and able statement of all the law applicable to the case, as made by the indictment and the facts proven at the trial. If so, then there was no error in refusing the charges asked and not given. The objections to the charges given by the court are particularly designated in the amended motion for new trial. A careful examination of the act of July 28, 1876 (Gen. Laws 1876, p. 59), will show that these objections are untenable.

WINKLER, J. The indictment upon which the appellant was tried and convicted contains two counts, one of which

charges the forgery of a transfer to a bounty land-warrant, described in the indictment. The second count in the indictment, and upon which the trial was had, charges the appellant (defendant) as follows : " That R. E. Hatch, on the ninth day of June, in the year of our Lord 1877, in Travis County, in said State of Texas, wilfully, feloniously, without lawful authority, and with the intent to defraud, did knowingly utter and use, as true and genuine, a certain false and forged instrument in writing, which instrument in writing was then and there false and forged, and which said instrument in writing did then and there purport to be the act of another person, to wit, the act of one George W. Jenkins, and did then and there purport to be a transfer in blank of certain property, to wit, a certain valid land-warrant, No. 66, for two hundred and forty acres of land in the State of Texas, issued by Clement R. Johns, as comptroller of public accounts of the State of Texas, to the said George W. Jenkins, and which said instrument in writing, having been made falsely, without lawful authority, and with the intent to defraud, by the person making the same, and which said false and forged instrument in writing did then and there relate to and affect an interest in lands in the State of Texas, and which instrument in writing having been made in such manner that said false and forged instrument in writing so made, if the same were true and genuine, would have transferred property, to wit, the bounty land-warrant aforesaid, and which false instrument in writing purports to bear date on the second day of June, A. D. 1877, and was, when so uttered and used by the said Hatch as aforesaid, in substantially the following words and figures, to wit :"—

[And here follows the written instrument which the defendant is accused of having uttered, knowing the same to be false and forged, set out at length.]

In the judgment-entry it is recited that " the defendant moved the court that the State be required to elect upon

which count of the indictment the defendant should be tried, and the State thereupon elected to try the defendant on the count for uttering a forged instrument." The jury returned a verdict of guilty, which was approved by the court, and ordered to be recorded.

Motions for new trial and in arrest of judgment were made and overruled, and final judgment entered in accordance with the verdict of the jury; and from the judgment this appeal is prosecuted, and the following errors are assigned: 1. The indictment is insufficient and defective. 2. The court erred in refusing to allow a continuance as prayed for, and as shown by bill of exceptions No. 1. 3. The court erred in admitting evidence as shown by bills of exception Nos. 2, 3, and 4. 4. The court erred in refusing a motion for new trial. 5. The verdict and judgment are not supported by the evidence. 6. The court erred in failing to charge the law of the case as applicable to a case dependent on circumstantial evidence. 7. The court erred in the several matters set out in bills of exception 3, 4, 5, 6, 7, and 8. 8. Justice has not been done.

Counsel for the appellant, in their brief, have not urged consecutively the several errors assigned, but say there are five points to which they wish to invite attention, *each one* of which, they say, is *meritorious* in a greater or less degree; and they set out the following: 1. Error by the court in overruling the motion to continue the case. 2. Error by the court in overruling objections taken to the admissibility of evidence. 3. Error by the court in its charge. 4. Error by the court in refusing charges asked by the defendant. 5. Error by the court in refusing a new trial.

It is proposed to consider the questions presented by the record, as presented in the condensed form set out in the brief of appellant's counsel, so far as necessary, though not precisely in the same order, nor to the full extent claimed for them in the brief.

Passing, for the present, the question of continuance, we come in order to the errors complained of in admitting evidence over objections by the defendant.   It appears from the statement of facts, and from bills of exception taken on the trial, that it became necessary for the prosecution to establish by proof the fact that the purported transfer of the bounty land-warrant set out in the indictment was a forgery, and for this purpose proved by a witness that the defendant had procured the witness to write a blank transfer, at defendant's dictation.   When the transfer attached to the certificate No. 66 was handed to the witness, he stated that "this is the transfer I wrote, as before stated. It is in my handwriting, except the names of the grantees, August and Conrad Bering, the date ' 2nd June,' and the names of the grantor and the witnesses M. M. Phillips and Wm. M. Gilleland.   After I copied the transfer, I gave it to defendant Hatch, and he carried it off.   There was no grantee named in it.   It was simply a copy of a blank transfer, or transfer in blank of said certificate, not signed or executed by any one.   I was at the desk when Hatch came in, and I wrote at his dictation."

Another State's witness testified to having seen the transfer alleged to be a forgery ; first saw it in the hands of a young man named Phillips.   The land-certificate was not then attached to the transfer.   This witness says : " The name George W. Jenkins was signed to it.   I do not remember whether Phillips's name was then signed as a witness, or not.   The name of Wm. M. Gilleland was not then signed as a witness."   This witness further testified that, at a subsequent time, he being a notary public, a man purporting to be George W. Jenkins, William M. Gilleland, and the defendant Hatch came to witness's office, when Gilleland introduced Jenkins as the maker of the deed.   Jenkins had the same transfer previously brought to witness by Phillips. The names of Phillips and Gilleland were then both signed as witnesses.   Witness asked Jenkins if that was his signa-

ture.   He stated that it was.   Witness then swore him to
an affidavit to that effect, and thinks Hatch paid the fee.
This witness stated : " The man introduced to me as George
W. Jenkins by Wm. M. Gilleland was a stranger to me.   I
have never seen him since.   *   *   *   The defendant, Hatch,
was present at the time, but did not do or say any thing
except to pay the fee of witness."   There was other testi-
mony on the subject.

In order to erect a standard of comparison for the intro-
duction of testimony of experts, to establish the forgery of
the name of George W. Jenkins to the transfer as grantee
and M. M. Phillips as a witness, a paper was offered, pur-
porting to be written by the defendant, commencing, " Frio
County jale, Nov. 7th, 1877," addressed to persons at Aus-
tin, Texas, and the envelope post-marked, " Friotown, Nov.
8, '77."   Agreeably to the bill of exceptions, the witness
Frank Wedig being on the stand, he was handed the paper in
question, and was asked whose writing it was.   " Witness
said he received it from defendant by due course of mail ;
whereupon defendant's counsel objected to its use, as it was
a private document belonging to the witness.   Thereupon
the court overruled said objection ; paper not offered in
evidence.   Subsequently, [the bill of exceptions continues]
when the witnesses Rankin, Spence, and Pease were being
examined as to the alleged forged instrument, they were
handed the same paper, [the *Frio jail letter*] and were asked
to state whether, in their opinion, the signature to the instru-
ment alleged to be forged, and the signature of the subscrib-
ing witness, Phillips, and the date ' June 2nd,' were written
by the same person who wrote the paper above referred to,
and they stated as shown by statement of facts."   The bill
of exceptions recites, further, that " the attorney for the State
then offered to submit to the jury the mechanical execution
of the paper, in connection with the other evidence, but not
the contents of the letter, as against the defendant ; and
counsel for defendant objected, after inspection of the let-

ter, because it appeared on the face of the letter that the same was written by defendant when he was confined in jail.   The court sustained the objection, on inspection of the letter, and the same was not permitted to go to the jury;" and on a repetition of the request to submit the mechanical execution of the letter, and not the contents of the letter, to the jury, the court refused to let the paper to go to the jury for any purpose.

This bill of exceptions presents thus to our minds an anomalous feature : of a written document, held by the court to be inadmissible as testimony in the case, and not permitted to go to the jury *for any purpose*, but which becomes a standard of comparison in order to admit important testimony, vitally affecting the question of the guilt or innocence of the defendant.   We are inclined to the opinion that, unless the instrument offered is of itself admissible testimony, it cannot be used as a standard of comparison in proving any material fact by comparison of handwriting.

Another strange feature is here presented.   The testimony of the witnesses Rankin, Spence, and Pease, based upon comparisons in which this letter was used as a standard, was permitted to go to the jury without objection on the part of the defendant.   To our minds, when the letter attempted to be used, and which was in fact used, as a standard of comparison, was itself excluded from the jury, the whole structure erected upon it of necessity toppled and fell when the foundation was removed.   Still, it is not shown, by motion, bill of exception, or otherwise, that the defendants either objected to the testimony of the witnesses when offered, or moved to exclude it from the consideration of the jury when the court refused to permit the letter to go to the jury.

The consequence of these omissions is, that the admission of this testimony by the court without objection, and no motion having been made subsequently to exclude it, standing alone, is not revisable as offered, agreeably to estab-

lished rules of practice, both of the Supreme Court and of this court, and which admit of no exception that we are aware of.

" The practice has long been settled that the rulings of the court   *   *   *   in admitting or excluding evidence will not be revised on appeal, except upon proper bills of exception taken in the court below, and incorporated in the record." *Owens* v. *The State*, 4 Texas Ct. App. 153.

For the rule of evidence in proof of handwriting by comparison, we refer to *Phillips* v. *The State, ante*, p. 364, decided by this court at the present term. As to the standard of comparison, it was then said : " The handwriting used as a standard must be either an admitted signature, or be established by clear and undoubted proof." Mr. Greenleaf says on this subject : " If it were possible, from the conflicting judgments, to establish a rule which would find support from the majority of them, perhaps it would be found not to extend beyond this : that such papers can be offered in evidence to the jury only when no collateral issue can be raised concerning them, which is only when the papers are either conceded to be genuine, or are such as the other party is estopped to deny ; or are papers belonging to the witness, who was himself previously acquainted with the party's handwriting, and who exhibits them in confirmation and explanation of his own testimony." 1 Greenl. on Ev., sect. 581. No question is raised as to the admissibility of the " Frio jail letter " in evidence, and we express no opinion on the subject.

It is urged on the part of the appellant that the jury were erroneously permitted to use a magnifying-glass in examining papers submitted in evidence, and were permitted to carry the glass with them in their retirement. We see no error in this ruling.

The fourth and fifth subdivisions of errors made by counsel relate to supposed error in the charge of the court as given, and in refusing to give certain charges asked by the

accused on the trial below.   On an examination of the general charge, we find that it is, in a general way, a correct enunciation of the law of the case as developed by the testimony, under the issues presented by the pleadings; but whether this would be a proper charge in another case, or on another trial of this, would depend on the case as then made by the pleadings and the proofs in evidence.

With reference to the first special charge asked, and which the court refused to give, we are of opinion that the testimony did not call for the charge specially.   So of the second special instruction.   The trial was upon the transfer, not upon the certificate.

The court gave a special instruction as follows: "If George W. Jenkins, the grantee in the certificate, authorized any other person to sign his name to said transfer, or acknowledged his signature thereto after it was so signed, either to James Neill as notary public, or to Wm. M. Gilleland as a subscribing witness thereto, then the same is his act and deed, and is not forgery."

The following charge was asked and refused, to wit: "Suspicion of guilt is not sufficient.   The facts constituting guilt must be proved.   The fact that defendant is under indictment raises no presumption of guilt.   The presumption of innocence is always indulged in favor of the defendant, until his guilt is established by legal evidence, beyond a reasonable doubt."   Abstractly considered, we see nothing objectionable in this; still, we are of opinion that the following paragraph of the general charge covered the same ground, and rendered the special charge unnecessary, to wit: "In all criminal cases the defendant is presumed to be innocent, and unless the jury are satisfied, from the evidence, of the guilt of the defendant, beyond a reasonable doubt, they should acquit."   This is in substantial compliance with art. 640 of the Code of Criminal Procedure, and all the law demanded at the hands of the court on the subject.

The following charge was asked and refused: "The bur-

den of proof is on the State to show defendant's guilt, and he is presumed to be innocent until shown to be guilty by competent testimony. It devolves upon the State to show that the transfer referred to in the indictment is a forgery. You must be satisfied from the evidence, beyond a reasonable doubt, that Geo. W. Jenkins, the grantee in the certificate, did not execute the transfer, or authorize its execution, and the burden of proving this is upon the State. If you are not so satisfied of this fact, you will find defendant not guilty."

This instruction was calculated to call the attention of the jury to one of the vital points of inquiry, and upon which the jury had necessarily to pass in arriving at a verdict, — *i.e.*, that the grantee, Jenkins, did not execute the transfer, or authorize its execution. Whilst, if the case had been presented on the general charge, and the charge in question had not been asked, we would hold that there was no such defect in the charge as would demand a new trial or warrant a reversal of the judgment, yet, in view of the testimony adduced, and what we may reasonably suppose was the course of argument, the charge being refused might well have led to the conclusion that, in the mind of the court, it was not indispensable to a conviction that the State was required by the law to show by evidence, to the satisfaction of the jury, that Jenkins did not execute the transfer, nor authorize its execution. The charge was not only correct in law, but was so preëminently fair we are not prepared to say that the court did not err in refusing it.

Recurring again to the question of continuance. At the first blush, the materiality of the testimony of the witness John Crooks, on account of whose absence a continuance was sought, is not clearly apparent; but when considered in in connection with the evidence adduced on the trial, and the affidavits offered in connection with the motion for a new trial, we are of opinion that it was sufficiently important and material to entitle the defendant to the benefit of it.

---

Syllabus.

---

The person whose signature is charged to have been forged to the transfer which the defendant is charged with uttering was not introduced as a witness, nor was any attempt made to account for his absence or whereabouts. The statement made in the affidavit of the deputy-sheriff, as to what the accused said to him concerning the witness, is neutralized by the affidavit of defendant's counsel. It seems that counsel had learned the facts set out in the affidavit for a continuance, and had ordered process for the witness, and that the accused had not been informed of this until after the interview with the deputy-sheriff, the accused being confined in jail and the defence intrusted to his counsel.

We are of opinion that a new trial should have been awarded. The judgment is reversed and the case remanded.

*Reversed and remanded.*